IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:05CV258-W

| | |
|---|---|
| JACQUE JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MECHANICS AND FARMERS BANK, )<br>)<br>Defendant. )<br>) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion to Compel" (document #34) and "Memorandum in Support ..." (document #35), both filed September 26, 2006; and the Defendant's "Response ... " (document #38) filed October 13, 2006.

On November 2, 2006, the Plaintiff filed his "Reply ..." (document #41).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B), and the subject Motion is now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will grant in part and deny in part the Plaintiff's Motion to Compel, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an action for damages and equitable relief under the Age Discrimination in Employment Act of 1967 ("ADEA"). The Plaintiff Jacque Johnson, who was born on January 16, 1948 and was over 40 years of age at all times relevant herein, alleges that because of his age, he was denied bonuses, subjected to employee discipline, and subsequently terminated by the

Defendant Mechanics and Farmers Bank ("the Bank"). The Bank contends that it took these actions in response to the Plaintiff's poor work performance and, ultimately, his insubordination.

Relevant to the subject Motion, sometime in 1998, the Plaintiff was hired as the Bank's Charlotte City Executive, then one of four City Executives with the Bank.[1] When Wesley Christopher was hired by the Bank in September 2003, he became and remained the Plaintiff's supervisor until Plaintiff's termination in May 2005. Mr. Christopher reported, in turn, to Lee Johnson, the Bank's President.

Sometime in Fall 2004, and contending that the Plaintiff's performance as City Executive was unsatisfactory, Mr. Christopher offered the Plaintiff two other positions with the Bank. After the Plaintiff declined the alternate positions, Mr. Christopher placed him on probation. The Plaintiff responded by filing a grievance pursuant to the Bank's grievance procedure. Ultimately, Lee Johnson withdrew the probation, but warned the Plaintiff that he would be subject to termination if his performance did not improve. Thereafter, Plaintiff filed his first administrative charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had received an adverse evaluation and been placed on probation as a result of age discrimination. In this charge, Plaintiff alleged that he was then 56-years-old, that Lee Johnson was "in his 60's," and that Mr. Christopher was "in his 50's."

In Spring 2005, the Plaintiff did not receive incentive compensation for his performance in 2004, although he apparently had received incentive compensation in previous years. In response, the Plaintiff filed his second administrative charge with the EEOC, contending that the Bank had not given him incentive pay due to his age and in retaliation for filing the EEOC charge, and that

---

[1]The other City Executives were Evelyn Acree, Stanley Green, and Queron Smith, although the record discloses only Mr. Smith's area of responsibility, that is, the Bank's operations in Durham, North Carolina.

Mr. Smith, the Durham City Executive, who apparently is younger and allegedly had inferior performance and job qualifications than the Plaintiff, had received incentive pay for 2004.

On April 21, 2005, the Plaintiff filed his Complaint in the Superior Court of Mecklenburg County, North Carolina, alleging disparate treatment based on age and retaliation, both in violation of the ADEA. The Defendant subsequently removed the state court action to federal court based on federal question subject matter jurisdiction, which has not been challenged and appears proper.

Sometime later in April 2005, the Plaintiff was informed that two of his subordinate employees, Leslie Cato and Lori Corpening, had engaged in a "confrontation" in the Bank's Charlotte main office. The Bank contends that the Plaintiff failed to respond properly to the altercation, that is, he allegedly dismissed Ms. Corpening's and Ms. Cato's behavior as being "common in a majority black environment." It is undisputed that Ms. Corpening complained to Lee Johnson, who determined that an investigation was required. Rather than direct the Plaintiff to investigate the matter, however, Lee Johnson engaged Steven Savia, an outside consultant, to investigate and make a recommendation of what, if any, disciplinary action should be taken vis a vis Ms. Cato and Ms. Corpening.

The Defendant maintains that Mr. Savia reached two critical conclusions: (1) that Ms. Cato was the aggressor in the confrontation because another employee had restrained Ms. Cato in order to prevent her from physically assaulting Ms. Corpening, and (2) that Ms. Cato's actions violated the Bank's policy on workplace violence or abuse. Based on these findings, Mr. Savia recommended that the Bank terminate Ms. Cato's employment, but also recommended that Ms. Corpening be transferred to another location.

In an email dated May 3, 2005, Mr. Christopher directed the Plaintiff to terminate Ms. Cato's

3

employment and transfer Ms. Corpening. It is undisputed, however, that although Mr. Christopher repeatedly demanded that the Plaintiff comply, he, instead, sent Mr. Christopher numerous emails criticizing the decision and the investigation, essentially contending that the Bank was using the Corpening/Cato incident as an excuse to remove two employees who were loyal to Plaintiff from the Charlotte main office.

On May 18, 2005, Plaintiff filed a third charge with the EEOC, alleging that in addition to being retaliated against because of his earlier EEOC charges and first lawsuit, he also was being subjected to a hostile work environment due to his age because "management ha[d] tried to damage [his] subordinate employees so they can weaken [his] defense."

On May 23, 2005, Mr. Christopher and Lee Johnson terminated the Plaintiff's employment for the stated reason of insubordination. The Plaintiff alleges that his duties were reassigned to Kevin Price and William Pickens, who were younger than the Plaintiff.

On June 21, 2005, Plaintiff filed a final EEOC charge, stating that he had been terminated based upon his age and in retaliation for filing prior charges with the EEOC and the first lawsuit.

On August 3, 2005, the undersigned entered a "Pretrial Order and Case Management Plan" setting the discovery and dispositive motions deadlines for January 20 and February 28, 2006, respectively. See document #6. With the consent of both parties, and following case consolidation, discussed below, those deadlines were extended several times, ultimately to July 10, 2006 for discovery and to August 25, 2006 for the filing of dispositive motions. See "Order[s]" (documents ## 18, 22 and 24).

On August 19, 2005, the Plaintiff filed a second lawsuit in this Court, alleging that his termination also violated the ADEA.

4

On January 13, 2006, the District Judge to whom the cases were then assigned (the Honorable Robert J. Conrad, Jr.) entered the parties' "Consent Order to Consolidate" (document #15).[2]

On June 9, 2006, the Plaintiff served his "First Set of Interrogatories" and, the next day, served his "First Requests for Production of Documents."

On July 12, 2006, the Defendants served their responses to those discovery requests.

On August 7, 2006, Plaintiff's counsel, Humphrey S. Cummings, who is a solo practitioner, underwent a surgical procedure, which according to his physician required four weeks of recuperation.

On August 14, 2006, Mr. Cummings wrote defense counsel contending that the Defendant's discovery responses were deficient and requesting supplemental responses. The Defendant refused to supplement its responses and indicated that it would oppose any Motion to Compel as untimely filed.

On August 25, 2006, the Plaintiff filed a "Motion ... [for Leave] to file a Motion to Compel Discovery" out of time, which the Court treated as a motion to extend the discovery deadline. See Document #25. The Plaintiff also requested that his deadline for responding to the Defendant's Motion for Summary Judgment, which was due to be filed that day, be stayed pending resolution of the Motion to Compel.

Later the same day, August 25, 2006, the Defendant filed its Motion for Summary Judgment (document #27), which is pending before Judge Whitney.

On September 12, 2006, the undersigned granted the Plaintiff leave to file a Motion to Compel and stayed his deadline for filing a response to the Defendant's Motion for Summary

---

[2]On July 7, 2006, this case was reassigned to the Honorable Frank D. Whitney.

Judgment pending the outcome of the discovery dispute. See "Memorandum and Order" (document #33).

On September 26, 2006, the Plaintiff filed the subject Motion to Compel.

Prior to filing its Response, the Defendant served supplemental responses to the Plaintiff's discovery requests, including the personnel files of Ms. Acree, Mr. Green, and Mr. Smith, the other City Executives during the period in question, who are, the Bank contends, the Plaintiff's only possible comparators.

In his Reply, the Plaintiff contends that although the Defendant's recent supplementation has significantly narrowed the discovery dispute, the personnel files that have been produced were incomplete, that is, the Defendant has yet to produce the Plaintiff's 2004 Annual Review or the other City Executives' Annual Reviews for 2003 and 2005, which appears to the Court to have been an oversight. The Defendant has, however, refused to produce the personnel files of Ms. Cato, Ms. Corpening, Mr. Pickens, and Mr. Price. Finally, the Defendant generally limited all of its other document production to documents created in or after 2000, rather than 1998 as the Plaintiff requested.

The Plaintiff's motion has been fully briefed and is, therefore, ripe for determination.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead

to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

Although temporal limits on discovery are determined on a case-by-case basis, courts have limited discovery to time periods similar to or shorter than the period that the Defendant seeks in this case. Accord Marens v. Carrabba's Italian Grill, Inc., 196 F.R.D. 35, 40-41 (D. Md. 2000) (in employment discrimination case, ordering production of documents of similar incidents occurring within five year period preceding plaintiff's termination); Kresefky v. Panasonic Communications and Sys.Co., 169 F.R.D. 54, 65 (D.N.J. 1996) (allowing discovery of similar events two years prior to plaintiff's termination); and Spell v. McDaniel, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984) (compelling discovery concerning allegations of unlawful use of force for three year period prior to alleged use of force that was subject of complaint).

Applying these legal principles, the Court concludes as an initial matter that the Defendant's limitation of its discovery responses to a five-year window beginning in 2000 was reasonable.

Indeed, taking the Plaintiff's allegations as entirely true for these purposes, the first discriminatory event did not occur until late 2004 when he received an unfavorable performance review and was placed on probation.

In light of the Plaintiff's right to conduct meaningful discovery, however, the Defendant's remaining, unilateral limitations on its production do not pass muster. Although the Plaintiff's co-City Executives are certainly comparators, the Plaintiff is also entitled to examine the qualifications and performance of Mr. Price and Mr. Pickens, whom the Bank allegedly selected to replace him, to determine not only their exact ages, but also whether they were similarly, less, or more qualified as the Plaintiff. Accord Laber v. Harvey, 438 F.3d 404, 430 (fourth element of prima facie ADEA claim is that plaintiff was replaced by "similarly qualified applicant who was substantially younger than the plaintiff") (4th Cir. 2006).

Because they were Plaintiff's subordinates rather than his peers or eventual replacements, the production of Ms. Cato's and Ms. Corpening's personnel files presents a closer case. In light, however, of the Plaintiff's contemporaneous complaint that the Bank's President, Lee Johnson, and the Plaintiff's direct supervisor, Mr. Christopher, had seized on those employees' "confrontation" as an excuse to remove employees who were loyal to the Plaintiff, he is entitled to receive discovery materials reasonably calculated to lead to the discovery of admissible evidence on that topic, including the subject employees' personnel files.

### III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The Plaintiff's "Motion to Compel" (document #34) is **GRANTED IN PART** and **DENIED IN PART**, that is, on or before November 27, 2006, the Defendant shall produce the

Plaintiff's 2004 Annual Review; the 2003 and 2005 Annual Reviews of Evelyn Acree, Stanley Green, and Queron Smith; and the complete personnel files of Kevin Price, William Pickens, Lori Corpening, and Leslie Cato; and the Plaintiff's Motion is **DENIED** in all other respects.

    2. Counsel for the Defendant shall certify to the Court when those responses have been served on Plaintiff's counsel.

    3. Within 21 days of receiving the above-compelled responses, the Plaintiff shall file his responsive brief to the Defendant's Motion for Summary Judgment (document #27).

    4. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO ORDERED.**

Signed: November 3, 2006

_____
Carl Horn, III
United States Magistrate Judge